# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* A. M. DANIELS, Minor.

UNPUBLISHED
May 5, 2016

No. 328722
Wayne Circuit Court
Family Division
LC No. 14-516330-NA

*In re* A. M. DANIELS, Minor.

No. 328724
Wayne Circuit Court
Family Division
LC No. 14-516330-NA

Before: JANSEN, P.J., and SERVITTO and M. J. KELLY, JJ.

PER CURIAM.

In these consolidated cases, respondent-father and respondent-mother appeal as of right the trial court order terminating their parental rights to the minor child under MCL 712a.19b(3)(c)(i)(conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age) and (3)(g)(the parent, without regard to intent, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age). We affirm in both cases.

The minor child came under the jurisdiction of the trial court in this matter upon admissions by both respondent-father and respondent-mother. Respondent-father admitted that at the time the petition was filed in April 2014 he was using heroin, which negatively impacted his ability to parent the child and could have endangered her, and further admitted to a criminal history as well as currently being on probation to one court and on delayed sentence to another. Respondent-mother admitted that she also had a criminal history, was currently on probation, and that she had used heroin off and on for the past year and a half which endangered the minor child.

The trial court conducted periodic review hearings, at which the respondents' compliance with the parent-agency agreements was discussed. When it was determined that neither parent

-1-

had adequately addressed the issues that brought the child under the jurisdiction of the trial court, a supplemental petition seeking termination of their parental rights was filed. At the conclusion of a June 15, 2015 termination hearing, at which respondent-mother failed to appear, the trial court terminated both parents' parental rights to the minor child. These appeals followed.

<u>Docket No. 328722</u>

Respondent-father contends that the trial court erred in finding that there was clear and convincing evidence to support the termination of his parental rights. We disagree.

This Court reviews for clear error the trial court's decision that a ground for termination has been proven by clear and convincing evidence. *In re Trejo*, 462 Mich 341, 355; 612 NW2d 407 (2000). A decision is clearly erroneous if the reviewing court, on the entire evidence, is left with a definite and firm conviction that a mistake has been made. *In re JK*, 468 Mich 202, 209– 210; 661 NW2d 216 (2003). When reviewing the trial court's findings of fact, we accord deference to the special opportunity of the trial court to judge the credibility of the witnesses. *In re Fried*, 266 Mich App 535, 541; 702 NW2d 192 (2005).

The gist of respondent-father's argument is that he was not given adequate time to comply with the parent agency agreement in this case, as he spent several months during the proceedings incarcerated. Respondent-father was incarcerated for a four-month period leading up to the June 15, 2015 trial date, having been released approximately one month prior, and had been incarcerated for an additional period of time after the minor child came into care, from September 30, 2014 through November 4, 2014, which he contends impacted his ability to fully comply with the parent agency agreement and which he further contends was held against him for purposes of missed visits and drug screens. Respondent-father further asserts that he has demonstrated an ability to be drug free and that his ability to comply with some aspects of the parent agency agreement serves as evidence opposing the termination of his parental rights.

We first note that respondent-father cites to no legal authority whatsoever in support of his position. On this basis alone we could affirm the trial court's ruling. See, *Peterson Novelties, Inc v City of Berkley*, 259 Mich App 1, 14; 672 NW2d 351 (2003)("Argument must be supported by citation to appropriate authority or policy . . . . An appellant's failure to properly address the merits of his assertion of error constitutes abandonment of the issue."). Nevertheless, even in addressing the merits of respondent-father's claims, we find no reason to disturb the trial court's ruling.

Prior to the April 2014 petition being filed in this case, Child Protective Services (CPS) received a referral alleging substance abuse and physical neglect of the minor child. CPS interviewed respondent-father in December 2013 and he reported that he was a former heroin user who had been clean for three years. His criminal record, however, shows that he was arrested on January 30, 2013, on a dangerous drug charge and ultimately pleaded guilty to possession of a controlled substance related to this arrest. His record further shows an arrest on June 12, 2013, and a plea to possession of a controlled substance a short time later. Moreover, at the April 16, 2014 preliminary hearing, a CPS worker testified that while respondent-father had told her he had been heroin free for a year, she conducted her own investigation and was told by his employer that respondent-father had used within the last two weeks. The CPS worker further

testified that respondent-father had failed his drug test taken that very day with his probation officer and that he had tried to pass a fake urine specimen the day prior with his probation officer. Respondent-father thus has a history of being less than truthful concerning his drug use.

In addition, respondent-father was offered services through family first in early 2014 but did not participate in the same. Respondent-father was admitted to a recovery center on April 2, 2014 and administratively discharged from the center a mere two days later. Thus, respondent-father had some opportunity to address his substance abuse issues prior to the trial court's involvement and failed to do so.

The minor child came under the jurisdiction of the trial court in this matter based, in part, upon admissions made by respondent-father on May 13, 2014, that he was using heroin at the time the April 2014 petition was filed and that this use negatively impacted the minor child and could have endangered her. On that date, respondent-father tested positive for opiates. Respondent-father also admitted to a prior criminal history, as alleged in the petition. In May, 2014, a parent agency agreement was placed on the record. This agreement required respondent-father to maintain proper housing, take random drug screens, engage in scheduled parenting time with the minor child, attend substance abuse therapy, attend parenting classes, and maintain a legal source of income. A parent's failure to comply with the parent-agency agreement is evidence of a parent's failure to provide proper care and custody for the child. *In re JK*, 468 Mich 202 at 214. In this case, respondent-father failed to comply with the parent agency agreement.

Less than three months after the parent agency agreement was placed on the record, respondent-father was residing in a hotel, and was not calling in daily for his random drug screens as required. In fact, respondent-father had yet to appear for a drug screen. Respondent-father had also been arrested on a dangerous drug charge, and was not making it to all of his scheduled parenting time with the minor child, citing work and court problems as impairments. Throughout the course of the proceedings, respondent-father was scheduled for 110 visits with the minor child and he missed nearly half of those visits. Importantly, respondent-father missed 20 of those visits during the time that he *was not* incarcerated.

Respondent-father was in jail from September 30, 2014 until November 4, 2014, for a traffic violation and for obstructing a police officer. Upon his release, he continued to miss drug screens, appearing for only one, on December 22, 2014, at which he tested positive. Notably, this positive test also came on a day respondent-father had parenting time with the minor child. While respondent-father points out that he had a negative drug test on May 28, 2015, it cannot be ignored that he had only been released from jail on May 18, 2015. Ten days of drug free living on his own (rather than forced by virtue of his incarceration) is hardly a demonstration of an ability to provide a stable, drug-free environment for the minor child going forward, considering that she was only 3½ and the fact that at that point she had been in foster care for thirteen months.

At the time of trial, on June 15, 2015, respondent-father had missed the majority of his required drug screens, having appeared for only two out of 30 drug screens. It is acknowledged that he was incarcerated for approximately five months out of these fourteen-month proceedings. However, Brittany Cowan, the caseworker who oversaw the minor child's case, testified at trial

that she did not include the drug screens that respondent-father missed due to his incarceration when she testified that he missed the vast majority of his required drug screens. Respondent-father has provided no explanation while he failed to report for the 30 drug screens required while he *was not* incarcerated.

Respondent-father was also referred for substance abuse treatment several times. He was terminated early from treatment, twice, at least once for lack of cooperation. The third time, he was terminated from treatment due to his incarceration. Respondent-father's incarceration undoubtedly interfered with his ability to obtain treatment at times. However, when given the opportunity for substance abuse treatment, respondent-father at least twice was terminated from treatment due to his reluctance/unwillingness to properly address his substance abuse issues. And, the third termination from treatment was due to respondent-father's inability to obey the law and refrain from police contact. The lack of substance abuse treatment, then, was completely due to decisive actions within the sole control of respondent-father.

Respondent-father indicates that he was gainfully employed throughout the proceedings (outside of the time he was incarcerated). That may well be true, however, Cowan testified that she asked him for pay stubs on a weekly basis and respondent-father failed to produce the same. Instead, respondent-father provided Cowan with a 2013 income tax return showing that he was working for a construction company that year—prior to the time the petition was filed. Moreover, respondent-father indicated that he was currently living in a trailer that was not currently appropriate housing for the minor child, though he was working to make the trailer suitable for her. Respondent-father thus still failed to obtain suitable housing and failed to verify a legal source of income.

Cowan did testify that respondent-father completed parenting classes and benefitted from the same. However, this is merely one component of the six components required in the parent agency agreement. In all other respects, respondent-father failed to comply with the parent agency agreement and failed to demonstrate that he had addressed the issues that had brought the child into care in the first place (i.e., his drug use and criminality). At most, respondent-father demonstrated that he completed and benefitted from parenting classes, and that he could pass a drug test 10 days after being released from jail. That is simply not sufficient given the history of this matter, the young age of the minor child and her need and entitlement to permanence and stability.

In sum, respondent-father's argument that he should have been given more time to comply with the parent-agency agreement and/or demonstrate that he had addressed his substance abuse problems did not take into account his substantial lack of compliance with the parent-agency agreement before and after his incarceration(s). The minor child entered foster care when she was 2 years and 7 months old and respondent-father's parental rights were terminated when she had been in foster care for 14 months. Throughout the proceedings, respondent-father, due to his own actions, continued to get arrested on drug related charges and thereafter be incarcerated, leaving the minor child in the neglectful care of her mother, who respondent-father knew to also have substance abuse issues. His failure to still have a suitable place for the minor child to reside, failure to attend substance abuse therapy, and failure to visit the child and report for drug tests even when available to do so lead this Court to conclude that the trial court properly found that statutory grounds existed to terminate respondent-father's

parental rights to the minor child under 712a.19b(3)(c)(i) and (g). And, although not challenged by respondent-father on appeal, we are satisfied that termination was in the minor child's best interests. We therefore affirm.

Docket No. 328724

Respondent-mother does not contest the statutory grounds for termination of her parental rights. Rather, she argues on appeal that the trial court committed clear error in failing to consider placement of the minor child with a family member, specifically the maternal grandmother, in lieu of termination, and in finding that termination of her parental rights was in the minor child's best interests. Thus, respondent-mother contends that reversal is required. We disagree.

The interpretation and application of statutes and court rules are reviewed de novo. *In re Sanders*, 495 Mich 394, 404; 852 NW2d 524 (2014). We review the trial court's determination regarding a child's best interests for clear error. *In re White*, 303 Mich App 701, 713; 846 NW2d 61 (2014).

When a child is removed from a parent's care during the adjudication phase under MCL 712A.2(b), " 'the court shall order the juvenile placed in the most family-like setting available consistent with the juvenile's needs.' " *In re COH, ERH, JRG, & KBH*, 495 Mich 184, 192; 848 NW2d 107 (2014), MCL 712A.13a(12). The agency, (the DHS in this case) must complete an initial services plan within 30 days of the child's placement (MCL 712A.13a(10)(a)) and, as part of that plan is required to comply with MCL 722.954a. *In re COH, ERH, JRG, & KBH*, 495 Mich at 192-93. "MCL 722.954a applies from the moment a child is removed from his or her parents' care, i.e., *before* any placement decision is made, and, consequently, the requirements of MCL 722.954a are intended to guide the DHS's initial placement decision." *Id*. at 195.

MCL 722.954a provides, in relevant part:

> (1) If a child has been placed in a supervising agency's care under chapter XIIA of the probate code of 1939, 1939 PA 288, MCL 712A.1 to 712A.32, the supervising agency shall comply with this section and sections 4b and 4c.

> (2) Upon removal, as part of a child's initial case service plan as required by rules promulgated under 1973 PA 116, MCL 722.111 to 722.128, and by section 18f of chapter XIIA of the probate code of 1939, 1939 PA 288, MCL 712A.18f, the supervising agency shall, within 30 days, identify, locate, notify, and consult with relatives to determine placement with a fit and appropriate relative who would meet the child's developmental, emotional, and physical needs.

"The processes for removing a child from his home and terminating a parent's rights are also governed by federal statutes and regulations." *In re Rood*, 483 Mich 73, 102; 763 NW2d 587 (2009). Relevant to the instant matter, 42 USC 671(a)(19) requires that a State foster care plan provide "that the State shall consider giving preference to an adult relative over a non-related caregiver when determining a placement for a child, provided that the relative caregiver meets all relevant State child protection standards."

-5-

At the preliminary hearing in the instant matter, held on April 16, 2014, the day the minor child was removed, the trial court asked Gabrielle Topp, from Child Protective Services, if she had located a relative suitable for placement of the minor child. Ms. Topp testified that she had not, as she looked for relatives, but that the relatives' names she had been given had not been truthful. Ms. Topp specifically stated that a maternal aunt did not qualify for placement, but that a paternal uncle or cousin had not yet been investigated, so there remained the possibility of placement with family. Respondent-mother's counsel advised Ms. Topp at that time that a maternal cousin should also be investigated. No mention was made of maternal grandmother.

Respondent-mother did not appear until the next hearing, held May 28, 2014, had concluded. Her counsel was, however, present on her behalf. Cowans, the foster care worker, testified that one relative had been presented for potential placement but that she had been unable to reach him. Again, no mention was made of the maternal grandmother. Ms. Topp testified that she had investigated and had not found a relative for the minor child who met this definition, and Cowans testified to one potential male placement who was pending investigation. Thus, it appears that within the statutory 30 day period, as required by MCL 722.954a(2), the agency did attempt to identify, locate, notify, and consult with relatives to determine placement with a fit and appropriate relative for the minor child.

"The preference for placement with relatives is also expressly preserved throughout the review process[.]" *In re COH, ERH, JRG, & KBH*, 495 Mich at 195. Specifically, the DHS is required to meet the following requirements under MCL 722.954a where relatives are concerned:

> (4) Not more than 90 days after the child's removal from his or her home, the supervising agency shall do all of the following:
> (a) Make a placement decision and document in writing the reason for the decision.
> (b) Provide written notice of the decision and the reasons for the placement decision to the child's attorney, guardian, guardian ad litem, mother, and father; the attorneys for the child's mother and father; each relative who expresses an interest in caring for the child; the child if the child is old enough to be able to express an opinion regarding placement; and the prosecutor.
> (5) Before determining placement of a child in its care, a supervising agency shall give special consideration and preference to a child's relative or relatives who are willing to care for the child, are fit to do so, and would meet the child's developmental, emotional, and physical needs. The supervising agency's placement decision shall be made in the best interests of the child.
> (6) A person who receives a written decision described in subsection (4) may request in writing, within 5 days, documentation of the reasons for the decision, and if the person does not agree with the placement decision, he or she may request that the child's attorney review the decision to determine if the decision is in the child's best interest. If the child's attorney determines the decision is not in the child's best interest, within 14 days after the date of the written decision the attorney shall petition the court that placed the child out of the child's home for a review hearing. The court shall commence the review hearing not more than 7 days after the date of the attorney's petition and shall hold the hearing on the record.

-6-

As set forth in the clear language of MCL 722.954a(4), (5), and (6) above, the review process is limited to a narrow time period: any request for documentation of the reasons for the placement decision must be made within 5 days by those receiving the placement decision, any potential petition for a review hearing must be made within 14 days of the written decision, and the review hearing must be held within 7 days after the petition. *In re COH, ERH, JRG, & KBH*, 495 Mich at 196. "Thus, there is no indication within the statutory language of MCL 722.954a that the Legislature intended that the preference for placement with relatives exists beyond the time frame identified within MCL 722.954a." *Id* at 196. Moreover, MCL 722.954a does not *require* that the court place a child with relatives.

Here, the minor child was placed in foster care shortly after removal from the home and continued placement in foster care was recommended, with the reasons for that decision appearing in a May 16, 2014 Foster Care Initial Service Plan. The only relative mentioned as a potential family placement at that time was a paternal uncle, whom the foster care worker indicated she left a message for, but who had not returned contact with DHS. The May 30, 2014 order of the trial court notes that the minor child is in an unrelated foster home and that "the only relative who was presented as a possible placement resource has been unresponsive to DHS contact."

If a child subject to the court's jurisdiction is removed from his or her home, periodic review hearings are mandatory. See MCL 712A.19(3). At the review hearings, the trial court "shall determine the continuing necessity and appropriateness of the child's placement and shall order the return of the child to the custody of the parent, continue the dispositional order, modify the dispositional order, or enter a new dispositional order." MCL 712A.19(8). Review hearings were held in this matter and the maternal grandmother appeared at an August 20, 2014 hearing, when the minor child had already been in foster care for a little over four months. At that hearing, when directly asked by the trial court if she was interested in having the minor child placed with her, maternal grandmother responded, "I, I just wanted to see what she's asking. I'm going to clean my record but I have a case from when [respondent-mother] was little but I've been clean for almost eight years and I've been trying to help them to get into—I work with rehab and stuff like that, so . . . ." Thus, at that point, maternal grandmother did not express an unequivocal desire to care for the minor child. At the next hearing, on November 12, 2014, Cowans stated that maternal grandmother had come forward the prior week to be considered for placement and was currently being assessed.

At the termination trial in June 2015, maternal grandmother testified that she spoke to a CPS worker when the minor child came into care and the worker advised her that something had come up on her CPS history concerning one of her daughters from many years ago. Maternal grandmother testified that she was unaware that the allegation was on her history and that she had to send several letters to have the matter removed. Maternal grandmother testified that the matter was finally removed around January of 2015.

The record evidence indicates that the DHS met the requirements expressed in MCL 722.954a(4) and (5). Notably, MCL 722.954a(2) requires the DHS not simply to identify and locate relatives with whom to place the minor child, but specifies that DHS identify and locate "a fit and appropriate relative who would meet the child's developmental, emotional, and physical needs" for placement. And, the DHS's placement decision is to be made "in the best interests of

-7-

the child" above all else. MCL 722.954a(5). Given that maternal grandmother had some sort of CPS allegation concerning her own child in the past, respondent-mother has not demonstrated that any initial placement decision that did not consider maternal grandmother was in error or was inconsistent with the child's best interests. And, considering the information that DHS had at the time of placement and for at least the first 90 days of placement, continued placement of the child in foster care appears to have been in her best interests.

It is true that maternal grandmother's CPS record was cleared around January or February 2015 and she was approved for placement around that time. However, Cowans testified that by that point the minor child had been in the same foster home for 10 months and their policy was not to move the child after 90 days spent in the same foster care home unless the foster parents are requesting that the child be removed. This appears consistent with our Supreme Court's recognition in *In re COH, ERH, JRG, & KBH*, 495 Mich at 196, that there is no indication that the Legislature intended a preference for relative placement beyond the time frame identified within MCL 722.954a. (i.e., 90 days, unless a written challenge to the placement decision is requested by an eligible person).

Respondent-mother cites to several cases in support of her assertion that guardianship with maternal grandmother should nevertheless have been considered as a viable option in lieu of termination. However, the majority of cases cited by respondent-mother are distinguishable because they concern circumstances where the minor child or children were residing with family when the case proceeded to termination. See *In re Mason*, 486 Mich 142, 163-164; 782 NW2d 747 (2010); *In re Olive/Metts Minors*, 297 Mich App 35, 43; 823 NW2d 144 (2012); *In re Mays*, 490 Mich 993, 994; 807 NW2d 307 (2012). Similarly, the statute cited by respondent-mother in favor of guardianship rather than termination, MCL 712A.19a(6)(a), provides that the court is not required to order an agency to initiate termination proceedings if the child is being cared for by relatives. These are not the circumstances before us.

Cowans testified at the termination hearing that adoption, rather than guardianship was in the minor child's best interest because it was permanent, which the young child needed. Maternal grandmother testified at the termination hearing that she had a good relationship with the child's foster parents and if they were given custody of the child, that is who she would want to have the child. Maternal grandmother expressed that she did not want to be the minor child's mother and raise her and that she would prefer to be a grandmother, but if the child needs her to take care of her as guardian and later, an adoptive parent, maternal grandmother would do so. When directly questioned by the trial court, maternal grandmother said she initially wanted to take care of the child and have the parents take her back. She testified that now, however, if the trial court was going to find that she should be adopted, she does not want the child to go anywhere but with the foster parents because they are good and she wants what is best for the minor child. The maternal grandmother, then, also appeared to believe that adoption by the foster parents was ultimately in the minor child's best interests.

The trial court, in considering the child's best interests, took into consideration that maternal grandmother tried to obtain placement of the child with her, but that an unfortunately lengthy process of having to clear something off the CPS central registry (which was not her fault) precluded placement. The trial court also noted that when maternal grandmother was finally cleared for placement, the child had already been in a stable foster care environment. The

court took specific notice of maternal grandmother's testimony that if parental rights were terminated, her first choice would ultimately be to have the foster parents adopt the minor child. The trial court further noted that the child was young, needed permanence and stability and that, even considering the criteria laid out in *In re Mason*, 486 Mich 142, the case "just doesn't qualify for that" so that termination was in the child's best interest.

If it is in the best interests of the child, the trial court may terminate parental rights instead of placing the child with relatives. *In re McIntyre*, 192 Mich App 47, 52; 480 NW2d 293 (1991). The trial court's determination in this case that termination was in the child's best interests was not in error.

In Docket No. 328722 and Docket No. 328724, we affirm.


/s/ Kathleen Jansen
/s/ Deborah A. Servitto
/s/ Michael J. Kelly